The third and final case today is number 25-12501, Timothy Gardner v. Stephen Jessup. Good morning, judges. My name is Jake Evans. I represent the appellates in this case. May it please the court, we're here today on a very important issue, and that issue is under Section 11B of the Voting Rights Act, whether an individual can bring a cause of action to stop voter intimidation. Can I ask you to address at some point during your remarks this question, and it's an Article 3 standing question. The complaint only seeks declaratory and injunctive relief, right? Correct. Okay. And so, our cases say that when you're only seeking declaratory and injunctive relief, you need to show, in this case, allege, facts from which it appears that there is a substantial likelihood that he will suffer the injury in the future. That's from one of our many cases on the point called Gerber Chiropractic from 2019. So, tell me why the complaint has sufficient allegations to establish that likelihood of similar future injury by the same defendant. Sure, and I can start at that issue. What the jurisprudence says on standing, and I've litigated standing issues, but another decision that's before this very court, which is the Fair Fight versus True the Vote, which is an 11B case, and if a voter has an injury in fact which has been interpreted by multiple district courts and circuit courts throughout the country, is a likelihood or a reasonable person in their light, in their position, would view whatever the acts as intimidation that creates standing. Under this specific back set, and again, there is no discovery. We are at the initial pleading stage, and as this court knows very well, that under the Rule 8 of the Civil Procedure Act, we have to interpret everything at this stage in the light most favorable to our client. We have a sheriff who is under the color of the law who, as the allegations in the complaint make true, was making repeated statements to intimidate individual voters, including the voter in this case, which is Mr. Strickland. But I think Judge Jordan's question stands. This is like sort of Fed Courts 101, Los Angeles versus Lyons. If you're seeking injunctive relief, prospective relief, Supreme Court has said you've got to show standing for each prayer for relief, right? So with respect to injunctive relief specifically, you've got to show that there is a likelihood that this same thing will happen to your guy again. And so where in the complaint can... From the same defendant. From the same defendant. So where is there in the complaint any allegation that your guy is even going to vote again? Or that the same people are going to run that would prompt Jessup to be the bad guy again? So we're seeking injunctive relief, declaratory judgment, and attorney's fees. The attorney's fees is very important to the assessment because when you go to vote, what damages do... And someone intimidates you. This is not a civil claim in that I was damaged because I didn't otherwise have the monetary benefit of being able to obtain it. And so being able to have the attorney's fees dynamic, which is if a court says, yes, you did violate 11B, then you're entitled to attorney's fees. But here... So do you mean that every time a civil rights plaintiff files an action for injunctive and declaratory relief and attaches an attorney's fees request, that the rule of Los Angeles versus Lyons goes out? I do not. But to answer the specific question here, which is why is it likely that in this instance it'll happen again? There's an... It's alleged, I guess most specifically, that this would happen to your guy at the hands of that guy. In the complaint, it alleges each of the underlying elements, which is one, was there an intimidation? Would a reasonable person in this position feel intimidated? And a sheriff comes in and says, I'm going to keep an eye on you if you don't effectively vote appropriately. That undoubtedly is going to strike fear in a reasonable person. The likelihood that it happens again, based upon the fact that he's done it once, making the inferences a reasonable court would make at the initial pleading stage. This is not... We have no discovery. We have no evidence. So we're not seeking a TRO. We're seeking after getting... As this court knows, you have a TRO, you have a preliminary injunction, and you have a final injunction. We have not got the benefit of discovery in this case to show in a final hearing that in fact there is a likelihood, but making the necessary inferences in a well-pled complaint here undoubtedly meets the threshold at the initial pleading stage to allow the case to go forward into the necessary discovery. But in Lyons, and I'll confess that I don't remember, frankly, whether Lyons was a 12B6 case or a summary judgment case. But in Lyons, the facts there are this poor schmo gets pulled over by an LAPD officer and gets choked for a traffic violation or something. And so he files a lawsuit both for damages and for injunctive relief. With respect to damages, the Supreme Court says you've got standing, you're good to go because what happened to you in the past, we need to remedy that. With respect to the prospective relief, the Supreme Court said you don't have standing for that because you can't demonstrate, despite the fact that this happened to you once, you can't demonstrate that some other rogue LAPD officer is going to pull you over and choke you again. And it seems like you're in exactly the same position. A bad thing happened to you, so you allege, but there's no reason on the face of the complaint to conclude that the same thing is going to happen to your guy at the hands of the same bad guy again. That logic would effectively eviscerate 11B because just like in the other cases pending before this Court, Fair Fight versus True the Vote, forcing at an initial pleading stage with the benefit of no discovery, coming forward with emphatic evidence that the same act is going to happen against the same individual is almost an impossibility that's going to neuter 11B. No, but you, okay, so you're analogizing to that other case, which I'm on. But in that case, you have a defendant, which is an organization dedicated, in its own words, to rooting out voter fraud. And it has been in existence for a while, and it's going to continue in existence. So its mission, for lack of a better term, is to get involved in elections and do certain things, and that case proceeded to a trial. So now, let me say this. The District Court didn't rule on Article III standing, and so I think that you, at the very least, may be entitled to go back and amend the complaint, but I think you've got an Article III standing problem because of the types of relief you sought. For example, you can ask for nominal damages to vindicate a right that is difficult to quantify monetarily, and the Supreme Court has said that that can take care of Article III concerns in some scenarios. But here, I just, if there was an allegation in the complaint that Mr. Jessup had done it before, and had done it in every election since he had been sheriff, then maybe you can start drawing an inference that he's going to keep doing it again. Like he's done it four times in four successive elections, he's going to do it in the fifth one too, because I'm a thorn in his side and I always vote against his candidate. But we don't have that sort of thing here. We don't know if the same candidates are going to play out. Those are at least my concerns. I mean, we've taken you, we've eliminated most of your time, but I'm going to give you additional time so you can address the merits of the 11B issue too, but at least those are my concerns. Sure, sure. So since Judge Jordan is going to be so magnanimous and give you extra time, I'm going to eat in a little bit more to the time you've got. I just need you to clarify one thing for me, and this is one respect in which the messy pleading here makes things difficult for us, because in count six, the Strickland, I'll call it the Strickland count, the 11B count, there it says, as Judge Jordan read, that you want a declaratory judgment and an injunction. At the end of the complaint, in the prayer for relief section, it says more generally, plaintiffs, plural, request presumed, actual, special, and punitive damages in an amount to be determined at trial. But I just want to make sure that I'm clear today. With respect to your client, you're not seeking damages. As far as Mr. Strickland? Correct. At this stage? Mr. Strickland's count is, at this stage, again, as Judge Jordan correctly noted, this was not brought up at the lower court, is seeking the attorney's fees, declaratory judgment, and injunctive relief as to the injunction claim, as far as the 11B claim. Okay. And not monetary damages. So we're not going to do a whole transunion analysis of, you know, sort of common law comparators for your intangible harm looking backwards. It's just declaratory and injunctive. At this stage, of course, we reserve the right to amend and address any of the issues that this honorable court is bringing forth. But yes. And again, from a standing issue here, I believe confidently that standing exists as the complaint is pled. As the complaint is pled, Sheriff Jessup did this to other people. That is put in the complaint. In fact, there's many people that likely would have came forward had the case been allowed to go forward. Sheriff Jessup was in this position for decades. He just recently got out of the position. Ethics violations were filed against him, which he consented to. So this is an individual in a small county in Georgia, which is effectively like a kingdom, and he controlled the county under his finger. Now, would that be helpful if we added those to the complaint? We're happy to do that with leave to amend, but I still think drawing the inferences, viewing the pleading in the light most favorable to the plaintiff, the court undoubtedly at this stage should find that standing exists for an 11B claim. Discovery should go forward on this issue to determine whether there is a likelihood of it happening again, but you don't have to plead your case in absolute entirety down to every specific detail, and therefore requiring this to go down, be amended, and then potentially go back up is not a good use of judicial economy or time, but I think even as the complaint is pled, it still makes clear there's a likelihood of it happening again. And I can briefly go into 11B, whether there's a private... We've asked you a lot of questions on the Article III issue, but we don't want to preempt the argument you have on 11B, which was the rationale on which the district court ruled, so can you give him five minutes, please, Valerie? Sure, and that's what the district court ruled on. This is an issue that has a circuit and district split throughout the U.S. The 11th Circuit has not ruled on this issue, which is whether there is a private cause of action under 11B. The overwhelming majority of courts throughout the country have found that there is, and there frankly is only two courts that have found that there isn't, and both of them were erroneous for pretty blatant and clear reasons. One is the Schilling-Washburn case. That was a case that focused on regulated party conduct and ultimately evaluated the facts to find that because under the statute, as pled, it was focused not on individual class of people to be protected, but regulated parties. It's inapplicable here. The other is the Andrews case, which I'm also counsel of record in, and that was a defamation case. At the end of the day, Judge Greenberg of the Northern District concluded that it was predicated primarily, the 11B was predicated primarily, he found on the election clause and therefore it shouldn't implicate a private right of action. That's incorrect, and there's courts throughout the country that have agreed with that. But what is the analysis that the Supreme Court has found in the Sandoval case, which is one, is there a rights-creating language? Now Judge Wood of the Southern District said, yes, there is rights-creating language. I'm not going to speak for Appelese, but they've even at least implicitly conceded there is. Just so we're clear, what is the rights-creating language? It feels to me like it reads like a Val Schout not provision. It feels like it reads almost identically to the provision at issue in Sandoval. Thank you for that question, it's a good question. The focus is whether 11B, or any statute for that matter, is protecting individual class of voters, or individual class of people. Both the section, so the courts throughout the country have also looked at very similar language to focus on that. The focus of this language is not a regulated entity, government entity, saying this government entity cannot do that. And it's even more strong for protecting individual class of voter rights as compared to section 2, section 5, and section 10 of the Voting Rights Act. All of which have, the Supreme Court has found, have implied causes of action. And so here, looking at it, any person who is voting, any person who is attempting to vote, those are the express language. And so because of that, that creates the right which Judge Wood doesn't agree on, or doesn't disagree with. And so the real analysis is, is there an implied right created? Yes. Is there a private remedy? That's what the real issue before the court is. And the answer is, yes there is. There is for a multitude of reasons. First, again, what is the purpose of the Voting Rights Act? The purpose is to protect individuals from voting. Here, it's not limited to the 14th or 15th Amendment. I would argue that it expands also to the election clause because the language here, unlike section 2 of the Voting Rights Act, is not predicated on any particular identity or racial animus. Here, it's more broad than that. And so Judge Wood focused on, oh, because it has to be the 14th or 15th Amendment, which the Voting Rights Act is there to protect, here, it is not because it's not has the direct racial animus. Well, courts have said that's actually not true. The Well case found that's not true. The League of United Latin American Citizens found that's not true. The William Hamm case found that's not true. The Rhodes v. Seiver case found that's not true. All of those are in our briefing. Let me ask you this as your time is kind of winding down. I think the most important hurdle for you on private remedy is the AG provision, right? I mean, the Supreme Court said in Sandoval, the express provision of one method of enforcing a substantive rule suggests Congress intended to preclude others. Courts have said that's not correct. Well, I mean, the Supreme Court is the one that said what I just said. So what do you do then with the AG provision that specifies the who, the AG, the what, preventive relief? You know, sort of the prohibitions that are covered, including sub-7 or 0-7, applies to any person who is engaged in. So why is that not, why does that not preempt the private remedy? So the Allen case and the Schweier case both said expressly that if you allowed the AG provision to, in essence, take away a private right of action, you neuter 11B. Well, I mean, the question is not whether the AG provision takes away a private right of action. Sandoval says you've got to come forward with affirmative evidence of congressional intent manifested solely in the language of the statute, not purposes. I mean, Sandoval, it was a paradigm shifting kind of case, right? Out as canon, in as Sandoval, intent as reflected in language and structure alone. You've got to, it's sort of your burden to show that Congress meant to do this, and Sandoval also says when Congress provided one mechanism of enforcement, it intended to preclude others. The text of the statute does. The text says no person shall intimidate, etc., etc., any individual. So that might, that might get you a right, but I'm not sure it gets you a remedy, especially in conjunction with the AG provision. Taking that collectively with the underlying purpose of the VRA. But which Sandoval said we're not doing anymore, right? Like purposes, schmerpuses. I mean, for better or worse, maybe Sandoval was wrong, but Sandoval is binding. The first, the language is clear that it exists to protect any person who is intimidated by anyone acting under color of law or otherwise, which implicates private individuals intimidating is a violation of 11B. Oh, sure. I think you're right about that. I think the or otherwise language does suggest that the AG can go after private individuals, but it doesn't in any way, shape, form, or fashion suggest that private individuals have a right of action. I think you might be mixing sort of subjects and objects there or something. A, you can't, a government agency cannot avail itself under Amendment 14 or 15 to go against individuals. So, here... I'm not sure that's right. There's no doubt that the Attorney General has the statutory ability and authority to enforce certain provisions of the Voting Rights Act. Isn't that right? Correct. Okay. And sometimes, if Congress doesn't require a color of law provision, the Attorney General can go after someone who's not acting under color of law, right? Yes, that is correct. That part of this is correct, but the law says, and this is the reason why there's only been two courts that haven't found 11B creates a private right of action. It is almost assumed that it is until two courts have said that it wasn't. I mean, there is a provision. I'm not sure that it solves the case for you, but there is a provision in another section of the Act, and it says, it's 13-1, I'm sorry, 52 USC 10302A, and it says, whenever the Attorney the voting guarantees of the 14th or 15th Amendments. Now, it seems to me that suggests that you can have individuals suing under certain provisions of the Voting Rights Act if you are enforcing a 14th or 15th Amendment right, but that may not be the case here because you don't have color of law, and this is not on racial grounds. Well, you do have color of law. The sheriff was, has pled in a complaint in his uniform with his badge, and then also courts have established you don't have to have the racial animus. Again, that's the Wool case. That's the League of United Latin Voters case. That's a case before the Fair Fight case, which is there's nothing in the text. The text does not require any specific identity. The text does not require any specific racial animus. The text says no person acting under color of law or otherwise may intimidate any person. We have the 14E Attorney's Fees Provision, which says that if you prevail, you're entitled to your attorney's fees. Judge Jordan, as you correctly noted, there's an express language in the VRA that says any, in addition to the AG, any aggrieved person, in combination with Section 2, Section 5, and Section 10, all having implied private rights of action. The VRA exists to protect individuals from voting. You can't intimidate an individual, either as a private person or someone acting under color of law, and courts throughout the country have said if you depend only on the AG, which is limited to the prosecutorial discretion they have to enforce 11B, the statute is neutered. All right. We've taken you way over your time, but you've saved your minutes for rebuttal. Thank you. Thank you. Ms. Hancock. May it please the Court, Emily Hancock for Sheriff Steven Jessup. Go ahead. There's a lot going on in this case. Obviously, we have some issues that there's not much, if any, appellate authority on. Both this court and the trial court requested supplemental briefings, so there's maybe a lot to cut through, but there's a really easy way to cut through it, and that is on the standing question. There's several good reasons to start there, even though that wasn't the basis for the trial court's ruling. First and foremost, it's a threshold issue. Without standing, we really can't get into any of the rest of this. In this case, it will resolve the whole appeal once standing is looked at. Of course, as Jordan points out, it really gets you – a ruling from us on standing would get you a without prejudice dismissal, basically. They might have the opportunity to start over. But you say it will resolve the whole case, maybe, for now. Yes. Yes. In this posture, it will be gone from this court. And if that's the ruling, it may kick the 11B question down the road, but if there's no standing, I don't think we have a choice in doing that. If the district court on an amended complaint, this is all hypothesis, but if the district court on an amended complaint finds standing, then it will have to revisit and probably reinstate its 11B ruling, and we'll be back up here again. But we'll be here with Article III standing and not with a possible problem. And certainly, if we end up in that posture, we would oppose any attempt to amend. And as futile for reasons I will get into, not only has standing not been shown on the face of pleadings as they currently are, but it's clear that there is not going to be standing under any future pleading, not to bring back the commonly known set of facts standard, but standing is not going to happen in this case, no matter how the plaintiff's claims are pleaded. But how can you hypothesize a set of facts that you don't know are going to be pled? Well, it's not going to be part of the record in the trial court, but as my colleague has notified the panel, Sheriff Jessup is no longer, he's now just Stephen Jessup, he's no longer the sheriff of McIntosh County. That doesn't mean that, again, taking the allegations of the complaint is true. That doesn't mean that he can't attempt to intimidate voters in a private capacity because 11B, putting aside the private right of action issue, doesn't require acting under color of law. So you can have a private individual who makes it his or her mission in life to obstruct voters and intimidate voters. And if there is a private right of action, you can sue. So it may matter to the merits, but I don't think that his no longer being a sheriff is necessarily a death knell for an amendment. Right, and I guess that's borrowing a problem several procedural steps down the road, which I don't want to do, when we can just clean things up here today on standing grounds. It sounded like there may have been some question as to whether that's appropriate to do given that the district court did not rule on standing. Well, it's a threshold jurisdictional issue, so, and I think it's one that's been raised and I think we're required to address it regardless of whether or not the district court ruled on it. The question is, what's the right result on Article III? Yes, Your Honor. Can I ask you this, just blocking and tackling? Do you also read the complaint the way I do with respect to the form of relief sought that Strickland really just wants a declaration, an injunction, and fees, I suppose? But when the prayer at the end says, plaintiffs, and it says, hey, yeah, we're seeking damages too, that's some other plaintiff. Yes, that's how we read it, that's how we briefed it, and it sounds like everybody actually agrees that's what's going on, so with that cleared up. Judge Jordan, I know in Moranski you had some concern in the dissent there that the plaintiff was blindsided by coming in on one ground and going out on standing. That's not going to be an issue here because it has been fully briefed below. I think the appellants even acknowledged in their brief that we've covered the issue of standing fully. What the plaintiffs point to to try to establish standing is back to Lujan, which is quoted in Moranski, and the quote that gets pulled from there by the appellants is that the court presumes that general allegations embrace those specific facts that are necessary to support the claim in evaluating standing. As the Moranski court noted, Lujan was pre-Twombly and Iqbal, and so that is not exactly how things work anymore. Obviously, Moranski did not completely flip that on its head, but said that we need to establish standing, we're going to need a concrete, redressable, specific harm to the particular plaintiff who's bringing the claims. Right, plausibly pled, right, because you don't require proof at the pleading stage. Absolutely, but post-Twombly and Iqbal, we need sufficient factual allegations, not conclusory labels that are assumed to carry some set of unknown factual allegations with them. We need to know the actual facts, and here the actual facts are really just a fact, and it is this one isolated remark on a single occasion in a single election, and it was very specific to the context of that election. The entire pleading is about the two candidates running and the sheriff's alleged support for one of the candidates in that particular race. So as the panel noted, the chances of that situation recurring with Stephen Jessup or Sheriff Jessup, whether with or without the color of law, supporting a specific candidate against a specific other candidate and then going to Mr. Strickland to speak to him about it is incredibly remote and has not been pleaded, most importantly. This may be getting ahead of the game, but I wouldn't think that he has to allege that the intimidation that is going to follow in the future relates to the same candidate. It has to relate to his voting, but not necessarily to the same candidate that the sheriff allegedly supported before. Okay, so even if we were to be— At least that's my gut feeling. In other words, if the sheriff has pet projects or other candidates that he's supporting and Mr. Strickland is on the other side opposing him and he continues to intimidate, I don't think the identity of the candidate is necessarily determinative. So even if we need only the same intimidator and the same intimidee, we have no factual allegations for that either. And there is some acknowledgment in Moransky that you can establish standing by showing a statutory violation. You obviously cannot have just a bare statutory violation, but if you can show that there's some relationship to a traditionally redressable harm, and that kind of lets us get into the private right of action piece of this as well. Because if you look at the harm that's alleged to have been suffered by Mr. Strickland here, it doesn't look like anything else that is redressable by an individual aggrieved plaintiff really anywhere else in the law. I believe during the Fair Fight oral argument, there was discussion of like a bank robber analogy. And there's no situation which an attempted bank robbery is going to happen, and then the person who was the subject of it is able to bring a civil action unless it's for something else like assault that occurred in connection with the bank robbery. So here, if we have attempted intimidation, because again, there's nothing in the complaint saying that it was successful intimidation. As far as we know, he was able to vote, and to vote for the candidate of his choosing, he just got a bad feeling about it. And so the idea of him bringing a proceeding for an attempted violation, there's no standing for that, and there's also no private right of action for that. And that's why the Attorney General is empowered to pursue things like this, like these violations. And I think Mr. Evans said that the logic of needing to show a likelihood that this particular situation will recur would eviscerate 11B. It doesn't eviscerate 11B because the Attorney General is empowered to seek relief for situations like that. And that can pull in more people, a much wider class of potentially grieved parties, and that's why the Attorney General has been given that authority to enforce it. Do we have any knowledge from the record or from judicially noticeable materials how vigorously the Attorney General enforces 11B? Certainly not in the pleadings in this case, nor in any of the cases I have read in connection with this one. I do not know. I think given the acknowledgement of it's not just intimidation, but an attempt at intimidation that are actionable by someone, actionable by the Attorney General, it's clear where the intent is that that be enforced by the Attorney General because no one else, no individual is going to be able to go and have standing for an attempt to claim under the Voting Rights Act. Well, but it's not just intimidation, though, and that doesn't take away from your answer, but it's not just intimidation, right? It's threat, coercion, and a couple of other verbs along the same lines, right, in the same family. Right, but an attempt to do any of those things, as separate from a successful commission of any of those things, an attempt is by definition not successful, and an individual is never going to have Article III standing to bring a claim for that. Let me ask you a question. You think intimidation, for someone to intimidate, do you have to succeed in the intimidation or do you have to do something that a reasonable person would view as intimidating? Well, I think, and we cited the Moore case, which obviously is not controlling just from a sister district court, to say that those are two different things, intimidation and attempt to intimidate, and so if the intimidation is not successful, which that court said, the way we know that is that the person wasn't able to vote. So you think intimidation is a subjective test or an objective subjective test? No, it is an objective test. Then why does it matter whether or not the individual voter was actually intimidated? If you hold a gun to a voter's head and you say, if you go into that voting booth, I'm not going to kill you, but I'll do something horrible to your family, and the voter nevertheless goes out and votes, has there been intimidation? I think because attempt is also in there as another option, we have to distinguish between the two. Otherwise, they run together, and although it is an objective standard, the way to separate an attempt at intimidation from successful intimidation is whether it worked or not, and so I don't think that's subjective in that we're going into someone's individual mindset. It's observable behavior. Were they prevented from voting? Or even the appellant's case that they want to offer on standing is the Fair Fight case, which I believe is still on appeal, but obviously everyone else here would know better about that than me because I think you all are involved in that appeal. But in the Fair Fight case, that plaintiff had somebody standing in the voting booth with her and said she didn't feel like she had a private voting experience where she was able to do what she needed to do in the voting booth, and so in a Fair Fight, that was found to establish standing for only that plaintiff, and there's been some attempt here to kind of piggyback Mr. Strickland onto the plaintiff from Fair Fight, and he is not in an even remotely similar situation. She waited multiple hours only to then vote under the watchful eye of someone standing apparently right next to her in the polling booth. Mr. Strickland does not have anything like that. He has a single allegation of one remark made to him outside of the voting booth and nothing in the complaint suggesting that he was not able to go and actually vote. If anything, Mr. Strickland is trying to plead this under a subjective standard, just saying kind of in a conclusory fashion, I was intimidated. That's not enough under Twombly-Nicobal, and that's not enough under an objective standard either. There's certainly no case law he's pointed to that shows a reasonable person would be intimidated by this kind of bland remark, this one single remark. And so that does not let him establish standing, and it also says there's no private remedy because there's no violation going on when he can only point to one single remark that is not going to get him past the line, either on standing or on private remedy. So the court does not need to get into kind of this changed landscape where there's some recent rulings where the courts have been looking at how far the Voting Rights Act extends as far as this private remedy thing, and we don't need to get to that because of standing. If the court does get there, there's no private remedy, and it could go out and the district court could be affirmed on that ground as well. All right. Thank you very much. Okay. I think what's important looking at this is what posture are we at before the court? We are on a motion to dismiss, and at the pleading stage, general allegations of injury resulting from defendant's conduct may suffice for on a motion to dismiss. The court presumes that the general allegations embrace those specific facts that are necessary to support the claim. So in the complaint, in paragraph 108, we plead, Mr. Strickland will continue to be injured. In the complaint, we plead Jessup intimidated other voters, and we plead a declaratory judgment claim. A declaratory judgment claim doesn't require future injury. A declaratory judgment claim... Our cases say differently. I mean, that's the language I quoted to you from Gerber Chiropractic from 2019, and it quotes earlier cases. It says, in order to demonstrate that there is a case or controversy that satisfies Article III standing requirements, when a plaintiff is seeking declaratory relief, as opposed to seeking damages for past harm, the plaintiff must allege facts from which it appears that there is a substantial likelihood that he will suffer the injury in the future. And that cites cases from 2014 and 1999. Gerber Chiropractic is from 2019. So those cases may be wrong. I don't recall those cases being on them, but I don't know what you do about them. They're on the books. They bind us. And here the complaint does. It pleads Mr. Strickland is a resident of McIntosh County. It pleads Mr. Strickland intends to vote in future elections. It pleads that the sheriff has done this to other voters. And assuming the facts as they're pled are true, making the inferences in the light most favorable to the non-movement on a motion to dismiss, can the court conclude on a motion to dismiss standard that there is a possibility, a probability, of succeeding under either a declaratory judgment action or injunctive relief claim Absolutely. You don't, we have to, the standard is to put the defendant on reasonable notice of what the claims are as they're pled. Without discovery, assuming they are true, and that undoubtedly has happened here. Let me ask you a question. So even if you were able to navigate the sort of the minefield of Gerber and the cases that it cites, wouldn't, I mean, that's a necessary condition to your standing, but I'm not sure it's a sufficient condition to your standing. At that point, wouldn't we just be in TransUnion land, perhaps much to my chagrin, but wouldn't we be in TransUnion land where now we're looking for some kind of like common law comparator about sort of whether or not this is the type of intangible injury that sort of is actionable. And we know from TransUnion that Congress' say-so isn't good enough. So the fact that 11B exists and might even create a private right, not good enough. You've got to find some comparator, and maybe the comparator is something like assault. But, like, wouldn't you still need to navigate that? No. Why? The very case that's before this court, Fair Fight, true to vote, went to a full two-week bench trial. The complaint in that case did not plead. They're going to do this again. We know they're going to do this again. I guess I'm asking you to set aside that they're going to do it again piece. Like I'm going to grant you that. Okay, like I'm going to say you're forgiven of any obligation you have to show that they're going to do this again. Now, though, why aren't we still, why don't you still have to contend with the Supreme Court jurisprudence on Article 3 standing that says to vindicate an intangible injury, statutory harm, you've got to show a common law comparator. There is no common law comparator. No, don't say that because that's fatal. So don't say that. Well, I understand that. 11B says, reading the text, that no one under color of law or otherwise shall intimidate, attempt to intimidate, coerce. That's what it says. Right now the analysis is whether there is standing to bring an 11B claim and the robustness of the detail in an initial complaint that must be pled to establish standing. There is uncontrovertibly an ability to bring a claim either by the AG or by an individual. So here what it says. I guess what I'm saying is, and I'm so sorry, but like so says the statute, right? But the point of Spokio and TransUnion is that the Supreme Court says we don't care much what Congress has done to authorize individuals to sue. Like in Spokio and TransUnion, Congress had gone further than it has here. It had said like, hey, here's some rights, and oh, by the way, there's a citizen suit provision and any old schmo can sue. We don't have that here in Congress. And the court said in Spokio and TransUnion, even there, even in the face of a citizen suit provision, we don't care. You've got to show us a common law comparator. So I'm just trying to figure out why the Spokio-TransUnion metastructure wouldn't apply here. I would have to submit supplemental briefing on that exact issue. I'll be honest. What I will say is looking at the 11B jurisprudence, and we've looked at many cases, virtually every case says that, one, you have a due process right to vote. You have a constitutional right to vote. If that right is impacted, if that right is negatively affected, if that right by virtue of intimidation is implicated, you have an injury in fact, period. There have been many 11B claims that have been brought on that basis. Maybe part of the answer to Judge Newsom's question is that this is not the sort of traditional intangible injury from which you have to analogize common law rights that existed at the founding or near the founding. In other words, because they use the words intimidation, coerce, threaten, those are pretty clearly common law torts in conjunction with the exercise of voting, and that might be sufficient to do the trick here, assuming you apply Spokio, TransUnion, et cetera, et cetera. It might also be that, like in Spokio and TransUnion, the Supreme Court seems to have carved out this little sort of sui generis exception for constitutional injuries. And it might be that if what you're really seeking here to vindicate is not a sort of a purely statutory injury but a constitutional right being enforced through a statute, then maybe that passes muster as well. I'm not really sure it matters much here. I'm not sure that even if you were able to navigate the Gerber minefield, that that would necessarily solve your standing problems. I think it would under the notice pleading. But what a submission is, because for the sake of judicial economy, I don't think it makes sense for anyone for this case to go back down, for us to replete a dismissal with a right to amend, us to replete, us to address these issues, and us to come back before the court in a year. We are happy to submit supplemental briefing on this issue. This was not an issue that was heavily briefed at the lower court level. It was not decided by Judge Wood. This is not what she decided. The issue that was teed up before the court is whether there's a private right of action under 11B, which I think we all can agree, having clarity on that issue before this circuit is something that would provide great value. I understand to get there we have the standing issue. And if that's something the court would entertain, we're happy to do it. I still believe, looking at the complaint in its flood, that undoubtedly, collectively, a sheriff who had, as the fact state, been in office for decades, who had an animus towards Mr. Gardner, who had told other individuals, do not vote for Mr. Gardner. If you vote for Mr. Gardner, you will be negatively impacted. Pleadings and allegations saying, I, Mr. Strickland, fear that this is my voting right to vote is going to be affected in the future. Those are sufficient under the lenient standard. It's more stringent in the state court, sure, but did it put the defendant on notice of what the claims are? The defendant has never claimed that they didn't. It's a DJ action in making the necessary inferences. I would respectfully submit there is standing, but if the court desires supplemental briefing, we would be happy to do that as well. All right. Thank you both very much. We're recessed for today.